## AFFIDAVIT OF MICHAEL LANE

I, Michael Lane, a Task Force Officer ("TFO") with the U.S. Drug Enforcement

Administration ("DEA"), being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I am a Detective for the Andover, MA Police Department.  I am a graduate of

1998 MPOC Lowell Police Academy and have been a Police Officer in Massachusetts since June

1, 1998.  I am presently assigned to the DEA Cross Borders Initiative ("CBI") Drug Task Force

located in North Andover, MA.  During the course of my employment with the Andover Police

Department and with the DEA, I have received training regarding the activities of narcotics

traffickers, including the methods used to package, store, and distribute narcotics, and the

methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics

trafficking activities. In addition to my training, I have had experience in the investigation of the

activities of narcotics traffickers.   I have participated in a number of narcotics investigations as a

case agent and in subsidiary roles.  I have debriefed numerous defendants, informants, and

witnesses who had personal knowledge about narcotics trafficking activities and the operation of

narcotics trafficking organizations.  I personally have participated in almost all aspects of

narcotics trafficking investigations, including but not limited to conducting surveillance (both

physical and electronic), using confidential informants, performing undercover purchases, and

executing arrest and search warrants.   These investigations involved but were not limited to the

following controlled substances: Heroin, Fentanyl, Cocaine, Marijuana, LSD, Methamphetamine

and Ecstasy.  These investigations have resulted in arrests, convictions, and seizures of

controlled substances, related paraphernalia, automobiles, and U.S. currency from the proceeds

of the distribution of controlled substances.  More specifically, I have made hundreds of arrests

for violations of the Controlled Substances Act, and I have testified in Superior and District courts throughout the Commonwealth and Federal Court in the District of Massachusetts.

2.      As a DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of the federal drug laws in Title 21 of the United States Code. I am a "federal law enforcement officer" as defined by Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3.      Since my assignment to the DEA, Cross Borders Initiative Task Force, I have become familiar with, and have utilized, many of the so-called "normal investigative procedures" used by law enforcement officers to identify, apprehend, and successfully prosecute persons involved in the distribution of controlled substances. These "normal investigative procedures" include, but are not limited to: physical surveillance, telephone toll analysis, public records analysis, interviews, gathering information from informants, "controlled purchases" of drugs, utilizing undercover police officers to infiltrate drug distribution organizations, trash analysis, executing search warrants and grand jury investigations.

4.      In the course of my official duties as a police officer, I have interviewed many defendants, informants and suspects who were users, sellers and distributors of controlled substances, and I have participated in the authorized electronic interception of conversations between such persons. On the basis of my training and experience, I am familiar with the vernacular of illegal narcotics abusers and distributors. I am acquainted with the methods by which such persons seek to disguise the subject of their conversations and operations, and I am familiar with the full range of methods, practices and techniques by which members of organized conspiracies illicitly transport and distribute controlled substances.

5.      I am submitting this affidavit in support of applications for the issuance of search warrants authorizing the searches of the following cellular telephones (collectively, the "Target Cellphones"):

    a.  A dark-colored Apple iPhone seized from Carlos RODRIGUEZ (hereinafter, "RODRIGUEZ") during his arrest on April 19, 2018 (hereinafter, "Target Cellphone #1). This cellular telephone is currently in the custody of the DEA.

    b.  An Apple iPhone with a white-face and copper-colored backing seized from Carlos TORRES (hereinafter, "TORRES") during his arrest on April 19, 2018 (hereinafter, "Target Cellphone #2").

    c.  An Apple iPhone with a white border seized from 19 Larchwood Road, Methuen, MA during the execution of a federal search warrant at that address on April 19, 2018 (hereinafter, "Target Cellphone #3").

A complete description of the Target Cellphones to be searched is set forth in Attachments A-1 through A-3, which is attached hereto and incorporated herein.

6.      As will be explained more fully below, on April 19, 2018, RODRIGUEZ and TORRES worked together to procure 50 grams of fentanyl to sell to a confidential informant (hereinafter, the "CI"). RODRIGUEZ utilized Target Cellphone #1 to communicate with the CI. After further investigation, approximately 150 grams of fentanyl were seized from the person of RODRIGUEZ outside of his home at 20 Canton Street in Lawrence. During the execution of a search warrant at TORRES's home at 19 Larchwood Road in Methuen, investigators seized 700 grams of suspected fentanyl from the same bedroom as Target Cellphone #3.

7.      As a result and as will be discussed below, I submit that there is probable cause to believe that the Target Cellphones to be searched contain records and other evidence of the

following offenses: (a) possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); (b) use of a communications facility in the commission of controlled substances trafficking offenses, in violation of 21 U.S.C. § 843(b); and (c) conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846 (collectively, the "Target Offenses"). More specifically, as will be discussed below, I submit that there is probable cause to believe that evidence of the Target Offenses, as set forth in Attachment B, will be located within the Target Cellphones to be searched, as described in Attachments A-1 through A-3.

8.    I have personally participated in the investigation of RODRIGUEZ and TORRES. I am familiar with the facts and circumstances of this investigation based upon: (a) my personal knowledge and involvement in this investigation; (b) my review of records related to this investigation; (c) information provided to me orally and in writing by other law enforcement agents; and (d) my experience and training as a criminal investigator.

9.    Because this affidavit is submitted for the limited purpose of establishing probable cause to believe that evidence of criminal activity involving the Target Offenses is located within the Target Cellphones to be searched, I have not included each and every fact known to me or other law enforcement officers involved in this investigation. Rather, I have included only those facts that I believe are necessary to establish probable cause for the issuance of the requested search warrants. Facts not set forth herein are not being relied upon in reaching my conclusion that there is probable cause to support the issuance of the requested search warrants. Nor do I request that this Court rely on any facts not set forth herein in reviewing these applications.

## PROBABLE CAUSE

10.     On April 19, 2018 investigators worked with the CI to arrange a purchase of

fentanyl from RODRIGUEZ. Investigators have observed the CI selling narcotics on numerous

occasions. The CI is cooperating with law enforcement with the hope of receiving consideration

on his/her own criminal case(s). The CI has not previously cooperated with law enforcement.

However, some information provided by the CI has been independently corroborated by

investigators. Information provided by the CI is believed to be reliable.

11.     At the direction of investigators on April 19, 2018, the CI placed a recorded

telephone call to RODRIGUEZ by calling Target Cellphone #1 in order to arrange the purchase

of 50 grams of fentanyl. RODRIGUEZ told the CI that he did not have 50 grams of fentanyl

ready, but that he could arrange the purchase in less than an hour. After the transaction was

arranged, investigators established surveillance of RODRIGUEZ's home, 20 Canton Street in

Lawrence. Approximately 15 minutes after the recorded phone call from the CI to

RODRIGUEZ, investigators observed RODRIGUEZ leave his home and drive in a red

Mercedes-Benz C240 (hereinafter, the "Mercedes") to a gas station. At the gas station, he picked

up a man, later identified as TORRES.  Simultaneously, the CI received a text message from

Target Cellphone #1 stating, "I'm getting it rn (right now)." The CI responded, "Ok" and "Hurry

bro." From the gas station, investigators observed RODRIGUEZ drive to 19 Larchwood Road in

Methuen in the Mercedes. This address is listed as the residence of TORRES on his

Massachusetts Board of Probation Record. Immediately after the Mercedes arrived at 19

Larchwood Road, TORRES got out of the Mercedes and went inside the house. Simultaneously,

the CI received a text message from RODRIGUEZ stating, "I'm getting em. How much you

got." The CI responded, "940 (referencing $940)." After less than one minute in the house,

TORRES returned to the front passenger seat of the Mercedes. After less than 30 seconds in the Mercedes, TORRES left the Mercedes and approached the passenger side window of a small hatchback car that had just arrived at 19 Larchwood Road. Based on my training and experience, I believe that TORRES retrieved fentanyl from 19 Larchwood Road and distributed it to RODRIGUEZ. RODRIGUEZ then left the area. Investigators maintained surveillance of RODRIGUEZ and followed him back home to 20 Canton Street in Lawrence. While RODRIGUEZ was driving home, the CI received a text message from RODRIGUEZ stating, "Pull up." The CI understood this to mean to go to RODRIGUEZ's home. Once RODRIGUEZ stopped in front of 20 Canton Street in Lawrence, investigators approached the Mercedes at the same time RODRIGUEZ was exiting the car. Investigators arrested RODRIGUEZ and conducted a search of his person. During the search of RODRIGUEZ, investigators located approximately 150 grams of suspected fentanyl in a plastic bag on his person. Investigators also seized Target Cellphone #1 from the person of RODRIGUEZ. Target Cellphone #1 was kept in the custody of a DEA investigator after it was seized until it was later secured in a DEA non-drug evidence locker.

12.     After seizing the suspected fentanyl from RODRIGUEZ, approximately 30 minutes after leaving 19 Larchwood Road, investigators resumed surveillance of 19 Larchwood Road. After approximately 25 minutes of surveillance at 19 Larchwood Road, investigators observed TORRES arrive at 19 Larchwood Road in the previously mentioned small hatchback car. He exited the passenger side of the car and started walking towards 19 Larchwood Road. Investigators ran towards TORRES and identified themselves. In response, TORRES fled into 19 Larchwood Road and investigators pursued him. Inside of 19 Larchwood Road, investigators detained TORRES after a struggle. Target Cellphone #2 was seized from the person of TORRES

after his arrest. Target Cellphone #2 was kept in the custody of a DEA investigator after it was seized until it was later secured in a DEA non-drug evidence locker. Investigators then secured 19 Larchwood Road pending a search warrant.

13.     Later that day, investigators executed a federal search warrant at 19 Larchwood Road. Inside a second floor bedroom believed to belong to TORRES's young daughter, investigators located 700 grams of suspected fentanyl. Investigators had found TORRES's daughter in that bedroom during a protective sweep of the home. In the same bedroom as the 700 grams of suspected fentanyl, investigators also seized Target Cellphone #3, which was found on top of the bed. A portion of the 700 grams of suspected fentanyl was found underneath that same bed. From that same bedroom, investigators also seized $2,300 U.S. currency, approximately 100 suspected hydrocodone pills, a firearm, various caliber ammunition, mail addressed to TORRES, and TORRES's Massachusetts identification card. Target Cellphone #3 was kept in the custody of a DEA investigator after it was seized until it was later secured in a DEA non-drug evidence locker.

### Investigators' Possession of the Target Cellphones

14.     As discussed above, the Target Cellphones are currently being stored by investigators at the CBI non-drug evidence locker as described in Attachments A-1 through A-3. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that they have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the investigators' possession.

## Drug Traffickers' Use of Cell Phones Generally

15.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use cellphones to carry out, communicate about, and store records regarding their daily activities.  These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

16.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones can now function essentially as small computers. The Target Cellphones are all smartphones. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data.  Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

17.     From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in smartphones.

18.     Based on my knowledge, training and experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet.  This is true because:

        a.     Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.  Furthermore, when users replace their electronic

8

equipment, they can easily transfer the data from their old device to a new one.

b.      Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person 'deletes' a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a 'swap' or 'recovery' file.

c.      Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d.      Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or 'cache.' The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

19.      Based on the foregoing, I believe there is probable cause to believe that evidence of the commission of the Target Offenses, more specifically, the items set forth in Attachment B, will be found in the Target Cellphones.

## CONCLUSION

20.      Based upon the evidence set forth above, as well as my training and experience, I submit that there is probable cause to believe that on April 19, 2018, RODRIGUEZ and TORRES conspired to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

21.      Based upon the evidence set forth above, as well as my knowledge, training and experience, I further submit that there is probable cause to believe that within the Target Cellphones, as described in Attachments A-1 through A-3, there exist evidence, fruits, and

instrumentalities of RODRIGUEZ's and TORRES's drug distribution activities as set forth in

Attachment B.  Accordingly, I respectfully request that search warrants be issued for the searches

of the Target Cellphones.


Michael Lane
Task Force Officer
Drug Enforcement Administration


SIGNED and SWORN to before me this 4th day of June 2018.


HONORABLE PAGE KELLEY
United States Magistrate Judge
District of Massachusetts

10

## **ATTACHMENT A-1**

### **Apple iPhone Seized from Carlos RODRIGUEZ**

A dark-colored Apple iPhone seized from Carlos RODRIGUEZ during his arrest on April 19, 2018. The cellphone is located at the DEA Cross Borders Initiative office with the Non-Drug Evidence Custodian, and labeled Exhibit N-35.

**ATTACHMENT A-2**

**Apple iPhone Seized from Carlos TORRES**

An Apple iPhone with a white-face and copper-colored backing that was seized from Carlos TORRES during his arrest on April 19, 2018. The cellphone is located at the DEA Cross Borders Initiative office with the Non-Drug Evidence Custodian, and labeled Exhibit N-19.

## <u>ATTACHMENT A-3</u>

### Apple iPhone Seized from 19 Larchwood Road

An Apple iPhone with a white border that was seized from 19 Larchwood Road in Methuen, MA during the execution of a search warrant on April 19, 2018. The cellphone is located at the DEA Cross Borders Initiative office with the Non-Drug Evidence Custodian, and labeled Exhibit N-28.

**ATTACHMENT B**

**Items to be Seized**

I. All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of 21 U.S.C. §§ 841(a)(1), 843(b), and 846 including those related to:

1. Cellular telephones, and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data relating to or referencing drug trafficking and/or referencing individuals engaged in drug trafficking located in the equipment of the Target Cellphones, including but not limited to:

    a. Names and contact information that have been programmed into the devices (including but not limited to contacts lists) of individuals who may be engaged in drug trafficking;

    b. Logs of calls (including last numbers dialed, last calls received, time of calls, missed calls, and duration of calls) both to and from the devices;

    c. Text messages both sent to and received by the devices (including any in draft form) relating to or referencing drug trafficking and/or referencing individuals engaged in drug trafficking;

    d. Incoming and outgoing voice mail messages both to and from the devices relating to or referencing drug trafficking or individuals engaged in drug trafficking;

    e. GPS data;

    f. Browser messages and/or internet communications (e.g., e-mail, text messages) both to and from the devices (including any in draft form) relating to or referencing drug trafficking or individuals engaged in drug trafficking;

14

g.     Documents, photographs, or videos in any format, including but not limited to Microsoft Word or Adobe PDF files, relating to or referencing drug trafficking or individuals engaged in drug trafficking;

h.     All data within the devices evidencing ownership, possession, custody, control, or use of the devices; and

i.     Service Provider handset unlock password(s) and any other passwords used to access the electronic data described above.

## Definitions

For the purpose of this warrant:

A.     "Equipment" means any hardware, software, storage media, and data.

B.     "Hardware" means any electronic device capable of data processing (such as a cellular telephone or smartphone, wireless communication device, or GPS navigation device); any peripheral input/output device (such as a drive intended for removable storage media); any related communication device (such as a SIM card), and any security device, (such as electronic data security hardware and physical locks and keys).

C.     "Software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

D.     "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive or memory card).

E.   "Data" means all information stored on storage media of any form in any storage format and for any purpose.

F.   "A record" is any communication, representation, information or data.  A "record" may be comprised of letters, numbers, pictures, sounds or symbols.